# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA
   Plaintiff,

 v.                 Case No. 05-CR-56

TINA DOOLITTLE
   Defendant.

## SENTENCING MEMORANDUM

Defendant Tina Doolittle was employed as the book-keeper of Direct Electric of Wisconsin, an electrical contracting company. As part of her responsibilities, she kept the company's books and paid its bills, and her employer provided her with a signature stamp for issuing checks. Between January 2000 and November 2002, she stole $236,660 from her employer by issuing unauthorized checks to herself and her credit card companies. Eventually, her employer discovered the theft, and the government charged her with mail fraud. Defendant pleaded guilty, and a pre-sentence report ("PSR") was prepared, which calculated her offense level as 17 (base level 6, U.S.S.G. § 2B1.1(a) (2002); plus 12 for loss, § 2B1.1(b)(1)(G); plus 2 for abuse of a position of trust, § 3B1.3; and minus 3 for acceptance of responsibility, § 3E1.1), and her criminal history category as I, producing an imprisonment range of 24-30 months under the advisory sentencing guidelines. Neither party objected to the PSR's calculations, but defendant requested a sentence below the range while the government argued for a sentence within the guidelines. In this memorandum I set forth the reasons for the sentence imposed.

## I. SENTENCING PROCEDURE

In imposing sentence, I consider the factors set forth in 18 U.S.C. § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

I consider the statutory factors sequentially. United States v. Leroy, 373 F. Supp. 2d 887, 894-95 (E.D. Wis. 2005); see also United States v. Ranum, 353 F. Supp. 2d 984, 989 (E.D. Wis. 2005). First, I look at the specifics of the case, i.e. the nature and circumstances of the offense and the history and characteristics of the defendant. § 3553(a)(1). Second, I consider the facts of the case in light of the purposes of sentencing and the needs of the public and any victims. § 3553(a)(2). Finally, I translate my findings and impressions into a numerical sentence. In so doing, I take into account the kinds of

2

sentences available, the sentencing range established by the Sentencing Commission, any pertinent policy statements issued by the Commission, and any restitution due the victims of the offense. In imposing a specific sentence, I must also seek to avoid unwarranted sentence disparities. § 3553(a)(3)-(7). My ultimate task is, after considering all of the above circumstances, to impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing set forth in § 3553(a)(2). United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 960 (E.D. Wis. 2005).

## II. APPLICATION

### A.     Nature of Offense

This was a very serious crime. Defendant stole $236,660 from her employer over nearly three years. She betrayed her employer's trust in giving her a signature stamp and covered up her fraud by altering the company's records. Further, the owner of the company, Tom Johnson, stated that in 2002 he paid defendant and her husband, who also worked for Direct Electric, more than $100,000, in addition to other benefits. Johnson also testified that when he initially confronted defendant about the theft she admitted stealing but greatly under-stated the amount, and falsely stated that she took the money to support a mentally ill brother. The company was seriously harmed by defendant's misconduct.

The motive for the theft appeared to have been defendant's desire to provide material things to her family. I accepted her contention that she did not take the money just for herself but also for others. Nevertheless, there was no evidence of dire financial straits confronting the family that pushed her into the theft. During the years of the theft defendant and her husband's reported income was around $100,000 per annum. Further,

3

the government submitted evidence that defendant spent the money on non-essential expenses, such as a cruise, new furniture, and purchases from Anton's Salon and Spa, the Boston Store, and Victoria's Secret. Defendant also received $28,961 in cash advances on her credit cards, which she repaid with stolen money.

**B.     Character of Defendant**

In contrast to the nature of the offense, defendant's character was otherwise outstanding. She had been married for over twenty years and had two children, ages eighteen and twenty, one a firefighter and the other a nursing student. She had no prior criminal record.

I received numerous letters from defendant's friends, family and neighbors attesting to her good character and generous nature. For instance, a letter from defendant's daughter Sarah depicted defendant as a very caring mother, actively involved in her daughter's activities. Defendant stayed with her daughter twenty-four hours per day while Sarah underwent multiple knee surgeries. Letters from Bruce and Kathy Sinotte, defendant's neighbors, depicted defendant as a caring and generous neighbor, willing to lend her car and pick up other people's children. Defendant drove Mrs. Sinotte to chemotherapy treatments and cooked meals for the Sinotte's children while Mrs. Sinotte was battling cancer. Mr. Sinotte described defendant as a second mother for many children in the neighborhood. A letter from Sara Bauer, another neighbor, further attested to defendant's generosity and the good job she did raising her children. Additional letters were to the same effect.

I also received a letter from defendant's physician, Dr. Adler, detailing her health problems, which include lumbo-sacral spondylosis, an arthritic condition of the lower back,

spina bifida occulta, a lack of full formation of the posterior arch of the L5 vertebra, and bilateral tronchanteric bursitis, soft tissue irritation over the outside of her hips. These conditions caused defendant significant pain, limited her ability to work, and required various medications. Dr. Adler expressed concern that incarceration could further aggravate defendant's lumbo-sacral spondylosis, which had not fully responded to treatment.

Defendant also had serious mental health problems. She first treated for depression in 1989 but got little benefit. After this offense came to light, she returned to treatment and seemed to be benefitting. A letter from her psychologist, Dr. Bruett, stated that defendant had been dealing with clinical depression for the past two and a half years, stemming largely from her feelings of guilt. He stated that she felt tremendous remorse for her conduct and had at times been suicidal. The PSR related a suicide attempt by taking pills. At sentencing, defendant expressed genuine remorse for her crime and the damage it cased. Her remorse was also reflected in the fact that she had made substantial restitution, paying more than $75,000 before the offense was charged. She also agreed, as part of her plea agreement, to pay the victim's accounting and attorney's fees, items not covered by the restitution statute.

C.    **Purposes of Sentencing & Needs of Public**

Given her character, stable family life, and lack of record, defendant was not dangerous or likely to re-offend. However, there was a need for a significant period of confinement to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense and deter others. A sentence containing no component of confinement was inadequate given the scale of the theft and the abuse of trust.

5

The victim was due $154,358.16 in restitution, and the victim's insurance company $25,000. Defendant had mental health and medical treatment needs, and I attempted to accommodate them in the sentence.

**D.     Consideration of Guidelines and Imposition of Sentence**

The guidelines called for a term of 24-30 months. I found that a sentence within that range was somewhat greater than necessary to satisfy the purposes of sentencing under all of the circumstances of this case. First, the range did not take into account defendant's positive personal characteristics, discussed above. The letters received by the court depicted defendant as a caring mother, good neighbor and positive influence in her community. The guidelines account only for criminal record, or lack thereof, and offer no other consideration for those who have made positive contributions to society. In imposing a sentence under § 3553(a), I must consider the defendant's entire history and characteristics, rather than just her worst moments. See, e.g., Ranum, 353 F. Supp. 2d at 990-91 (imposing non-guideline sentence in part due to the defendant's otherwise outstanding character).

Second, the guideline range did not account for defendant's physical and mental health issues. I found that a sentence with the range could set back the progress defendant had made in treatment for her depression. I further found that due to her significant physical problems, a sentence within the range would be more onerous than for a healthy person.

Third, the guidelines did not fully take into account the genuine remorse defendant demonstrated and the fact that she has already paid a substantial amount of restitution. See United States v. Milne, 384 F. Supp. 2d 1309, 1312 (E.D. Wis. 2005) (noting that court

6

Case 2:05-cr-00056-LA    Filed 11/02/05    Page 6 of 8    Document 29

can consider voluntary payment of restitution prior to charging in imposing sentence below guideline range). I also noted that a sentence within the guideline range would delay defendant's repayment of the balance of the restitution. The amount, while high, was feasible, and defendant was employable. Perhaps the best way to address the needs of the victim in this case was to make him whole financially. See 18 U.S.C. § 3553(a)(7); see also United States v. Peterson, 363 F. Supp. 2d 1060, 1062 (E.D. Wis. 2005) (imposing non-guideline sentence to enhance the defendant's ability to pay restitution).

However, I had to balance against these considerations the serious nature of the offense, the continued deception after defendant was caught, and the nature of the purchases she made using the victim's funds. For all of these reasons, and considering the types of sentences available, I imposed a sentence of 18 months imprisonment. This accounted for the omissions from the guidelines discussed above and effectively dropped the range by 2 levels. Any greater reduction would have unduly depreciated the seriousness of the crime and failed to deter others. Because the sentence hewed closely to the guidelines and was supported by the particular facts of the case, it did not create unwarranted disparity.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 18 months. Based on her financial situation and the amount of restitution, I determined that she did not have the ability to pay a fine and so waived the fine. I ordered that she pay restitution in the amount of $154,358.16 to Direct Electric and $25,000 to Cincinnati Insurance Co. I further ordered that she serve a supervised release term of three years. I imposed the maximum term given the amount of restitution due. As conditions, I ordered

that she make regular restitution payments; not hold employment having fiduciary responsibilities without first notifying the employer of her conviction, or hold self-employment having fiduciary responsibilities without consent of the supervising probation officer; receive advance approval for any major financial transactions; provide access to all financial information requested by the supervising probation officer; not sell, transfer or give away any asset with a fair market value of more than $500 without the approval of the probation officer; and participate in a mental health treatment program. Other conditions appear in the judgment.

    **SO ORDERED**.

    Dated at Milwaukee, Wisconsin, this 2nd day of November, 2005.

                        /s Lynn Adelman

                        _____
                        LYNN ADELMAN
                        District Judge

8

Case 2:05-cr-00056-LA   Filed 11/02/05   Page 8 of 8   Document 29